## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DANIEL PHILLIPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 06-2442-KHV** |
| **KIMBRA L. MARTIN,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

Daniel Phillips brings suit against Kimbra L. Martin, his ex-wife, seeking a declaration that he has fully satisfied his child support obligations and that he is not bound by the child support enforcement orders of the Washington state courts.  On March 1, 2007, the Court dismissed plaintiff's complaint for lack of subject matter jurisdiction but granted plaintiff leave to file an amended complaint.  See Memorandum And Order (Doc. #19) at 4-5.  On March 16, 2007, plaintiff filed an amended complaint.  On September 24, 2007, the Court required plaintiff to show good cause in writing why the Court should not abstain from hearing his action under Younger v. Harris, 401 U.S. 37 (1971).  See Order And Order To Show Cause (Doc. #44) at 2.  This matter is before the Court on plaintiff's Response To Show Cause Re: Younger v. Harris (Doc. #52) filed October 30, 2007.  Having considered plaintiff's response, the Court finds that the action should be dismissed under Younger.

### Factual Background

Plaintiff's amended complaint, as supplemented by various court filings and orders in related

cases in Washington and Kansas state courts,[1] may be summarized as follows:

In July of 1983, Phillips married Martin in Oregon. Shortly thereafter, they had a child. The family moved to Missouri in 1987 and then to Kansas in 1988, where Phillips and Martin divorced in June of 1989. On June 30, 1989, they resolved all rights and claims in a divorce and custody decree in the District Court of Johnson County, Kansas. This decree included a child support order that the same court later modified in 1993 (the "Kansas support order").

Phillips moved to Missouri in August of 1989 and remained there until 1997, when he moved back to Kansas (where he still lives). Martin and the child moved to Washington in 1992 after living briefly in New Jersey. Since 1993 this case has involved a complex multi-state history of litigation about child support orders.

In 1993, in the Superior Court of King County, Washington, Martin filed a petition to modify the custody decree and approve her proposed parenting plan. Phillips consented to the plan, which was filed in February of 1994. In 1995, Martin filed a request to register and enforce the Kansas support order in the King County Superior Court. She also filed a petition for support modification, asserting personal jurisdiction because the child might have been conceived in Washington. Phillips entered a special appearance and moved to dismiss Martin's motion to modify support, arguing that the court lacked personal jurisdiction because the child could not have been conceived in Washington. Phillips did not contest personal jurisdiction for purposes of enforcing the Kansas

---

[1]    The Court's factual background is based in large part on the order of the Court of Appeals of Washington. See In re Marriage of Kimbra L. Owen & Daniel D. Phillips, 108 P.3d 824 (Wash. Ct. App. 2005). The Court can take judicial notice of the orders and motions in Washington and Kansas state courts because those proceedings have a direct relation to the matters at issue. See TH Agric. & Nutrition, LLC v. Ace European Group Ltd., 488 F.3d 1282, 1297 (10th Cir. 2007); St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979).

support order.  The King County Superior Court entered a default judgment against him for unpaid child support and granted Martin's petition for modification (the "Washington modified support order").  Phillips did not appeal.

Later in 1995, Martin sought to enforce the Washington modified support order in Missouri – where Phillips was living at the time.  The Missouri Division of Child Support Enforcement entered an administrative order against Phillips, which he appealed to the Missouri Supreme Court.  In 1999, the Missouri Supreme Court overturned the order, holding that Washington had no authority to modify the Kansas support order under the Uniform Interstate Family Support Act (UIFSA).  In 2001, Martin unsuccessfully petitioned a Kansas court to enforce the Washington modified support order in Kansas.

In February of 2003, in the King County Superior Court, Martin filed a motion for contempt because Phillips had not made child support payments required by the Washington modified support order.  Phillips filed a special appearance and motion to dismiss based on lack of subject matter and personal jurisdiction.  A commissioner found that the court lacked personal jurisdiction to enter a contempt order.

Shortly thereafter, in the King County Superior Court, Martin filed a motion for contempt based on Phillips' failure to make child support payments required by the *Kansas* support order.  Phillips again moved to dismiss.  This time he asserted lack of subject matter jurisdiction, lack of personal jurisdiction and forum non conveniens.  A commissioner denied the motion to dismiss and found Phillips in contempt, entering judgment for back child support payments, interest, medical expenses and attorney fees.  Phillips moved for revision and filed a motion to stay the Washington judgment pending a Kansas court determination of arrearages.  In the alternative, Phillips asked to

file substantive answers to Martin's allegations.  In October of 2003, the King County Superior Court denied Phillips' motions and affirmed the commissioner's ruling.  Phillips appealed.

On September 3, 2003, in the United States District Court for the Western District of Washington, plaintiff was charged with failure to pay interstate child support in violation of the Child Support and Recovery Act ("CSRA"), 18 U.S.C. § 228.  The information charged that Phillips had failed to pay accrued child support owed to Martin, his ex-wife and a resident of Washington, under the terms of the Kansas divorce decree.  Phillips pled guilty to the charge.  On March 31, 2004, the federal court sentenced Phillips to five years probation and mandatory restitution in the amount of $36,096 as required by 18 U.S.C. § 228.  Martin filed a Victim Impact Statement and addressed the court at sentencing.  In August of 2004, Phillips' criminal matter was transferred to this Court.  See United States v. Daniel Dennis Phillips, Case No. 04-cm-80060-CM.

On February 25, 2005, Phillips notified the Court of Appeals of Washington that he had fully paid restitution in federal court for accrued child support.[2]  See Notice Of Payment, attached as Exhibit T-1 to Plaintiff's Declaration (Doc. #54).  Phillips noted that "[t]he outstanding sums remaining at issue in the matter before the Court are the accrued interest, medical reimbursements and attorney fees of approximately $35,000."  Id.  Phillips did not argue that payment of the restitution relieved him of his duty to pay these remaining items.

On March 21, 2005, the Court of Appeals of Washington ruled on Phillips' appeal of the orders of the King County Superior Court.  It held that (1) Martin had substantially complied with the procedural registration requirements of UIFSA and that the trial court therefore had subject matter jurisdiction to enforce the Kansas support order; (2) the trial court had personal jurisdiction

---

[2]     Phillips noted that he paid $36,090, but the actual amount of restitution was $36,096.

over Phillips for purposes of enforcing the Kansas support order; and (3) the trial court had not erred in denying Phillips' motion to dismiss, but that he should have had an opportunity to file a substantive answer.  In re Marriage of Kimbra L. Owen & Daniel D. Phillips, 108 P.3d at 829-32.

On May 12, 2005, pursuant to a report of the United States Probation Office which found that Phillips had fully paid the restitution, the Honorable Carlos Murguia of this Court discharged him from probation and ordered that the proceedings in the federal criminal case be terminated.  See Order Of The Court (Doc. #2) in Case No. 04-cm-80060-CM.

On November 29, 2005, the Washington Supreme Court denied plaintiff's petition for review.  See In re Marriage of Kimbra L. Owen & Daniel D. Phillips, 126 P.3d 1279 (Table) (Wash. 2005).  On January 13, 2006, the Court of Appeals of Washington entered a mandate to the King County Superior Court in accordance with the opinion of the Washington Supreme Court.  See Exhibit N to Doc. #67.

Martin asserts that Phillips owes additional money under the Kansas support order and has filed various administrative and judicial actions in Washington to recover such money.  In January of 2006, the District Court of Johnson County, Kansas declined to rule on the effect of Judge Murguia's order on administrative and judicial actions in Washington.

On April 20, 2006, in the King County Superior Court, Phillips filed an opposition to Martin's request for a scheduling order.  See Reply To Petitioner's Motion For Judgment And Request To Establish Case Scheduling Order, attached as Exhibit U to Plaintiff's Declaration (Doc. #54).  In that memorandum, Phillips argued that under the Supremacy Clause and principles of collateral estoppel, he is not obligated to pay additional money because he had paid in full the restitution which the federal court ordered.  See id. at 3-4.

On August 2, 2006, in the King County Superior Court, Martin filed a motion to confirm that court's prior order and judgment which held Phillips in contempt and required him to pay back child support, interest, medical expenses and attorney fees. See Exhibit V to Plaintiff's Declaration (Doc. #54). On August 23, 2006, after Phillips failed to submit a timely response to Martin's motion,[3] the King County Superior Court entered an order which affirmed the prior judgment dated October 8, 2003 and awarded Martin interest, medical expenses and attorney fees. See Order And Judgment, attached as Exhibit Y to Plaintiff's Declaration (Doc. #54). It also held that the principal amount of unpaid child support in the amount of $36,096 had been satisfied. See id. at 2. On September 6, 2006, the King County Superior Court entered an amended order which noted that Phillips had satisfied the principal amount of unpaid child support in his federal criminal case, but that satisfaction of that judgment did not satisfy the remainder which Phillips owed Martin. See Amended Order And Judgment at 2, attached as Exhibit CC to Plaintiff's Declaration (Doc. #54).

On September 5, 2006, Phillips filed a motion to reconsider the Court's order of August 23. See Motion For Reconsideration Of Ruling Dated August 23, 2006, attached as Exhibit AA to Plaintiff's Declaration (Doc. #54). On September 12, 2006, the King County Superior Court overruled Phillips' motion to reconsider. See Order On Motion For Reconsideration, attached as Exhibit DD to Plaintiff's Declaration (Doc. #54). Neither party appealed.

On October 11, 2006, Phillips filed suit in this court. Phillips alleges that by seeking additional child support in Washington state court, Martin violated the terms of Judge Murguia's

---

[3]        On August 21, 2006, Phillips filed a response. See Respondent's Reply To Petitioner's Motion For Judgment, attached as Exhibit W to Plaintiff's Declaration (Doc. #54). In that response, Phillips again argued that under the Supremacy Clause and principles of collateral estoppel, he is not obligated to pay additional money to Martin because he had paid in full the restitution which the federal court ordered in his criminal case.

order of May 12, 2005, which held that Phillips had paid in full the required restitution in his criminal case. Pursuant to 28 U.S.C. § 2201, Phillips seeks a declaration "that Defendant is bound by the [federal] District Court's Judgment finding the amount owing under the Kansas Support Orders and that such sums have been paid in full." 1st Amended Complaint For Declaratory Relief And Permanent Injunction (Doc. #21) filed March 16, 2007 at 6.[4]  Plaintiff also seeks an injunction to enforce the proposed declaration, i.e. an order which permanently enjoins defendant "from pursuing collection in interstate commerce of any additional amount under the Kansas Support Order." Id.  In this case, the requested declaration and injunction would have essentially the same effect. Plaintiff asserts federal question jurisdiction under 28 U.S.C. § 1331.

### Analysis

Under Younger, a federal district court must abstain from hearing a federal case which interferes with certain state proceedings. In Younger, a state criminal defendant filed suit in federal court, seeking to enjoin the state criminal prosecution. 401 U.S. at 38-39. After discussing a long line of authority counseling against federal interference in state court matters, Id. at 43-49, the Supreme Court found no justification for "prohibiting the State from carrying out the important and necessary task of enforcing [its] laws against socially harmful conduct that the State believes in good faith to be punishable under its laws and the Constitution." Id. at 51-52

Though the primary application of Younger involves state criminal proceedings, the doctrine has been extended to ongoing state civil and administrative proceedings as well. See Amanatullah v. Colo. Bd. of Med. Exam'rs, 187 F.3d 1160, 1163 (10th Cir. 1999). Younger dictates that a federal

---

[4]      Plaintiff asserts that Judge Murguia's ruling that he satisfied his restitution in the criminal case bars defendant's efforts to obtain additional child support.

district court abstain from exercising jurisdiction over federal claims when (1) a state criminal, civil or administrative proceeding is pending; (2) the state court provides an adequate forum to hear the claims raised in the federal complaint; and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.  Id.  Absent extraordinary circumstances, abstention is mandatory when these elements are satisfied.  Id.

**I.      Pending State Proceeding**

Plaintiff argues that there are no pending state court proceedings.  For purposes of the first Younger element, however, a proceeding is pending if – as of the filing of the federal complaint – not all state appellate remedies have been exhausted.  See Loch v. Watkins, 337 F.3d 574, 578 (6th Cir. 2003); Brown v. Day, 477 F. Supp.2d 1110, 1114 (D. Kan. 2007); see also Huffman v. Pursue, Ltd., 420 U.S. 592, 609 (1975) (Younger standards must be met to justify federal intervention in state judicial proceeding where losing litigant has not exhausted state appellate remedies).  Because plaintiff filed the instant action before the deadline to appeal the Washington state court judgment, see Wash. R. App. P. 5.2(a), the Washington state action is considered pending for purposes of Younger.

**II.     Adequacy Of State Court Forum**

Abstention under Younger is appropriate where plaintiff has an "opportunity to raise and have timely decided by a competent state tribunal" the constitutional claims which he asserts in the federal action.  Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 437 (1982); Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 77 (2d Cir. 2003). Typically, a plaintiff has an adequate opportunity to raise federal claims in state court "unless state

-8-

law clearly bars the interposition of the [federal statutory] and constitutional claims." J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1292 (10th Cir. 1999) (quoting Moore v. Sims, 442 U.S. 415, 425-26 (1979)); see Crown Point I, LLC v. Intermountain Rural Elec. Ass'n, 319 F.3d 1211 (10th Cir. 2003). The Supreme Court has reaffirmed "the constitutional obligation of state courts to uphold federal law, and its expression of confidence in their ability to do so." Allen v. McCurry, 449 U.S. 90, 105 (1980) (citing Stone v. Powell, 428 U.S. 465, 493-94 n.35 (1976)). The burden rests on plaintiff to show that state procedural law barred presentation of his claims. Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 14-15 (1987).

Plaintiff alleges that the parties dispute the meaning of the phrase "total unpaid support" contained in 18 U.S.C. § 228 and its effect on defendant's collection activities under UIFSA, 1st Amended Complaint (Doc. #21) ¶ 18, but the Washington state district court has already ruled against plaintiff on this issue, see Amended Order And Judgment at 2 (satisfaction of principal amount of unpaid child support in federal court did not satisfy remainder still owing Martin in state case), attached as Exhibit CC to Plaintiff's Declaration (Doc. #54). Plaintiff argues that the Washington state court did not provide an adequate forum because it overruled his argument on timeliness grounds. See Plaintiff's Response (Doc. #52) at 5. Plaintiff, however, has not shown that he did not have the opportunity to present his claim in state court at an earlier date. See Juidice v. Vail, 430 U.S. 327, 337 (1977) (Younger only requires that plaintiff be afforded opportunity to present federal claim in state proceedings; failure to avail himself of opportunity does not mean state procedures were inadequate); World Famous Drinking Emporium, Inc. v. City of Tempe, 820 F.2d 1079, 1083 (9th Cir. 1987) (fact that plaintiff did not avail itself of opportunity to litigate constitutional claim in state forum does not demonstrate that state forum was inadequate); see also

Spargo, 351 F.3d at 79 (relevant question is whether state procedural remedies could provide relief sought, not whether they will provide remedy); Kirschner v. Klemons, 225 F.3d 227, 235 (2d Cir. 2000) (to establish inadequacy of state forum, plaintiff must show that state laws, procedures or practices prevent his effective interposition of federal contentions).  Plaintiff has not satisfied his burden to show that state procedures did not afford him an adequate remedy.  See Pennzoil, 481 U.S. at 15.

### III.    Important State Interest

The State of Washington has an important interest in enforcement of domestic relations orders which are registered in the state.[5]  See Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992) (whole subject of domestic relations of husband and wife, parent and child, belongs to laws of states and not laws of United States); Moore v. Sims, 442 U.S. 415, 435 (1979) (family relations are traditional area of state concern); Anthony v. Council, 316 F.3d 412, 421 (3d Cir. 2003) (state has overriding interest in ordering, monitoring, enforcing and modifying child support obligations); Williams v. Jewell, 107 F.3d 881 (Table), 1997 WL 100929, at *2 (10th Cir. Mar. 7, 1997) (issues involving family relations pose questions of important state interest); Morrow v. Winslow, 94 F.3d 1386, 1397 (10th Cir. 1996) (state has interest in orderly conduct of proceedings in its courts in manner which protects interest of child and family), cert. denied, 520 U.S. 1143 (1997); cf. Hunt v. Lamb, 427 F.3d 725, 727 (10th Cir. 2005) (federal courts lack jurisdiction over whole subject of domestic relations of husband and wife, parent and child).  The CSRA, a federal criminal statute,

---

[5]        The fact that the Washington state court order relies in part on orders by Kansas and Missouri courts does not diminish the importance of the Washington state interest because the child resided with his mother in Washington.  Cf. In re Marriage of Kimbra L. Owen & Daniel D. Phillips, 108 P.3d at 501-02 (UIFSA does not limit Washington court's power to enforce order because order was registered in that state).

is designed to merely aid in the enforcement of state-ordered support obligations.  See Alaji Salahuddin v. Alaji, 232 F.3d 305, 309 (2d Cir. 2000) (CSRA intended to benefit custodial parents and children victimized by nonpayment of state-ordered support obligations and does not create federal right but merely criminalizes conduct that infringes state-created rights); United States v. Crawford, 115 F.3d 1397, 1401 (8th Cir.) (citing United States v. Sage, 92 F.3d 101, 107 (2d Cir. 1996)), cert. denied, 522 U.S. 934 (1997) (CSRA in no way interferes with state laws or judicial proceedings; CSRA does not regulate domestic relations but serves to assist states in enforcing their judgments and orders; CSRA seeks merely to implement state policies when parent and child live in different states and judgment has been willfully flouted).  The State of Washington has an important interest in enforcement of domestic relations orders which are registered in the state.

## IV.      Extraordinary Circumstances

Where the three requirements of Younger are satisfied, the Court must abstain unless extraordinary circumstances exist. The Younger doctrine does not require abstention where the state proceeding is motivated by a desire to harass or is brought in bad faith.  Huffman, 420 U.S. at 611. No improper motive is present in this case.  After remand, Martin merely sought enforcement of the Kansas support order as permitted by the order of the Court of Appeals of Washington.  In addition, the Court cannot find any other extraordinary circumstances which would permit it to avoid application of the Younger doctrine.  Where the elements of Younger are satisfied, and no extraordinary circumstances are present, dismissal of plaintiff's equitable claims is proper.  Taylor v. Jaquez, 126 F.3d 1294, 1298 (10th Cir. 1997), cert. denied, 523 U.S. 1005 (1998).  Here, plaintiff's complaint seeks only injunctive and declaratory relief, making dismissal of the entire action appropriate.

Plaintiff argues that <u>Younger</u> does not limit a federal court's authority to issue injunctions which are necessary to protect and enforce its judgment and orders. <u>See</u> <u>Plaintiff's Response</u> (Doc. #52) at 2-4 (citing <u>Diabo v. Delisle</u>, 500 F. Supp.2d 159 (N.D.N.Y. 2007)). In <u>Diabo</u>, the court found that <u>Younger</u> did not apply because further state custody proceedings would undermine and make ineffective the federal court's order which determined the custody arrangement for the child and barred further court proceedings to alter the residence of the child. <u>See</u> <u>Diabo</u>, 500 F. Supp.2d at 167, 170. Phillips has not shown that the Washington state court orders which require him to pay interest, medical expenses and attorney fees undermine the orders in his federal criminal case. The criminal judgment against Phillips – and Judge Murguia's order which held that Phillips had paid court-ordered restitution for child support – did not address interest, medical expenses and attorney fees.[6] In general, a criminal judgment does not limit a victim's pursuit of damages through alternative proceedings. <u>United States v. Lansing</u>, 71 Fed. Appx. 84, 86 (2d Cir. 2003); <u>see also</u> <u>Hudson v. United States</u>, 522 U.S. 93, 99 (1997) (double jeopardy clause forbids only multiple criminal punishments); <u>Spencer v. Casavilla</u>, 44 F.3d 74, 79 (2d Cir. 1994) (recognizing availability of civil suits against convicted criminals); <u>United States v. Barnette</u>, 10 F. 3d 1553, 1562 (11th Cir.) (criminal restitution order not res judicata against civil damages action), <u>cert. denied</u>, 513 U.S. 816 (1994). Even where the prosecuting authority and the victim are part of the same sovereignty, the law ordinarily adopts a "strong presumption against application of collateral estoppel based upon

---

[6]    In a filing in the Court of Appeals of Washington in February of 2005, Phillips notified the Court of Appeals of Washington that he had fully paid restitution in federal court for accrued child support. <u>See</u> Notice Of Payment, attached as Exhibit T-1 to <u>Plaintiff's Declaration</u> (Doc. #54). Phillips noted that "[t]he outstanding sums remaining at issue in the matter before the Court are the accrued interest, medical reimbursements and attorney fees of approximately $35,000." <u>Id.</u> Phillips did not argue that payment of the restitution relieved him of any duty to pay these remaining items.

sentencing findings." Lansing, 71 Fed. Appx. at 86 (quoting United States v. U.S. Currency in the Amount of $119,984.00, More or Less, 304 F.3d 165, 174 (2d Cir. 2002) (internal citation omitted)).

In United States v. Bigford, 365 F.3d 859 (10th Cir. 2004), a criminal prosecution under the Deadbeat Parents Punishment Act ("DPPA"),[7] 18 U.S.C. § 228(a), the Tenth Circuit held that defendant can challenge an underlying default support order on the ground that the state court which issued the default order lacked personal jurisdiction over defendant. Id. at 873. In reaching this conclusion, the Tenth Circuit noted that even if defendant prevailed on this issue in the criminal case, that ruling would have no force in a subsequent civil enforcement action by the parent who obtained the default support order. Id. The Tenth Circuit explained as follows:

> Congress intended the DPPA to serve as a mechanism for punishing parents who did not pay child support obligations and encouraging those parents to pay those obligations; it did not intend to provide deadbeat parents an additional mechanism with which to challenge the validity of the child support orders that had been issued against them. * * *

> Our construction provides deadbeat parents no additional mechanism with which to avoid the judgments entered against them, because a federal court's ruling in the DPPA defendant's favor on the jurisdictional issue will have no force in a subsequent civil enforcement action brought by the parent who initially obtained the support order. Collateral estoppel, or issue preclusion, can only be invoked against a party who had a full and fair opportunity to litigate the issue, Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation, 975 F.2d 683, 687 (10th Cir. 1992) (requiring, as a prerequisite to the application of collateral estoppel, that "the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication"), and the parent who initially obtained the child support order is not a party to the DPPA prosecution.

> Thus, a parent who successfully defends against a DPPA prosecution on the basis that personal jurisdiction of the underlying support order was lacking must relitigate the jurisdictional issue in any subsequent enforcement action brought by the parent who initially obtained the support order. Allowing federal courts to

---

[7]      The DPPA superseded the CSRA, but the operative language in 18 U.S.C. § 228(a) did not change. See id. at 863 n.1.

entertain jurisdictional challenges to the underlying state support order for purposes of defending against a DPPA criminal prosecution will not impair the ability of the parent who subsequently attempts to enforce the judgment to do just that.

Id.  Based on the above reasoning, a federal court restitution finding does not preclude a victim who participates in a DPPA criminal prosecution from seeking an additional amount in state court.[8] Accordingly, the Washington state court's order which requires Phillips to pay interest, medical expenses and attorney fees does not undermine the judgment or Judge Murguia's order in Phillips' federal criminal case.[9]  See also Taylor v. Jaquez, 126 F.3d 1294, 1295-96 (10th Cir. 1997) (applying Younger despite prior federal decree which confirmed title and registration of property because federal judgment made only passing reference to issue of notice to surrounding property owners).

Plaintiff argues that Younger does not apply because the Washington state court did not have authority to amend its order to state that satisfaction of the judgment in the federal criminal case did not satisfy the remainder which Phillips owed Martin.  See Plaintiff's Response (Doc. #52) at 5 n.2;

---

[8]      The Court notes that the Assistant United States Attorney who was assigned to plaintiff's criminal case has filed an affidavit which states that (1) Martin was not a party in the criminal case; (2) the federal government did not have any agreement with Phillips as to interest, medical expenses or other costs; and (3) the issues of interest, medical expenses and other costs were not litigated in the criminal case.  See Affidavit of Jeffrey C. Sullivan, attached to Defendant's Sur-Reply In Support Of Motion For Summary Judgment (Doc. #72) filed December 12, 2007.

[9]      Phillips also raises the Anti-Injunction Act, 28 U.S.C. § 2283, but it appears that his claims would be barred under that statute.  The Anti-Injunction Act generally prohibits a federal court from granting an injunction to stay proceedings in a state court, but "excepts from that prohibition the issuance of an injunction by a federal court 'where necessary . . . to protect or effectuate its judgments.'"  Parsons Steel v. First Ala. Bank, 474 U.S. 518, 519 (1986) (citing 28 U.S.C. § 2283).  As explained above, plaintiff has not shown that an injunction is necessary to protect any judgment or order in his federal criminal case.  See Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 297 (1970) (any doubts as to propriety of federal injunction against state court proceedings should be resolved in favor of permitting state courts to proceed).

-14-

see also Amended Order And Judgment at 2, attached as Exhibit CC to Plaintiff's Declaration (Doc. #54).  Plaintiff did not appeal the state court judgment and has not shown that he could not have raised this argument on appeal.  See Juidice, 430 U.S. at 337 (failure to avail himself of opportunity in state court does not mean procedures were inadequate); Lomtevas v. Cardozo, No. 05-CV-2779(DLI)(LB), 2006 WL 229908, at * 4 (E.D.N.Y. Jan. 31, 2006) (applying Younger where no indication that plaintiff lacked opportunity to raise argument in state appeal).

**IT IS THEREFORE ORDERED** that plaintiff has not shown good cause why the Court should not abstain from hearing this action under Younger v. Harris, 401 U.S. 37 (1971).  This action is dismissed in its entirety without prejudice.

Dated this 29th day of January, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Court